# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TENNESSEE
# EASTERN DIVISION

| | |
|---|---|
| CARLTON LEE MCALISTER, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| VS. | ) No. 1:05-1093-T/An |
| | ) |
| CARROLL COUNTY, TENNESSEE; | ) |
| JOHN DOE 1–10 | ) |
| | ) |
| Defendants. | ) |

## ORDER GRANTING MOTION OF DEFENDANT CARROLL COUNTY TO DISMISS AND/OR FOR SUMMARY JUDGMENT

On March 28, 2005, Plaintiff, Carlton Lee McAlister ("Plaintiff"), filed a complaint against Carroll County, Tennessee ("the County"), and against ten unidentified jailers who worked for the County Sheriff's Department. Plaintiff, who was incarcerated in the County jail from January 27, 2004, until at least March 14, 2004, claims that the County and its jailers violated his rights under both federal and state law during his incarceration. The County moves to dismiss the complaint or, in the alternative, for summary judgment on the ground that Plaintiff's claims are time-barred. Because the parties rely on "matters outside the pleading" in support of their respective positions, the court will consider Defendant's motion to be one for summary judgment only. See FED. R. CIV. P. 12(b)(6). For the reasons set forth below, Defendant's Motion for Summary Judgment is GRANTED.

This document entered on the docket sheet In compliance
with Rule 58 and/or 79 (a) FRCP on 9/29/05

I.

On or about January 27, 2004, Plaintiff voluntarily surrendered himself at the Carroll County Jail to begin serving a sentence imposed pursuant to a state court conviction for DUI. (McAlister Aff. ¶¶ 2, 12). Before he arrived, Plaintiff's physicians informed the jail authorities that Plaintiff suffered from several medical conditions that would require physical accommodations and the safekeeping and dispensing of prescription medication. (Id. ¶ 14). In particular, Plaintiff had suffered from spinal cord injury, traumatic brain injury, fibromyalgia, neuropathy, two herniated discs in his neck and back, migraines, depression, panic attacks, and chronic pain and muscle spasms. (Id. ¶ 9). As a result of these conditions Plaintiff required a walking cane, prescription narcotics, and prescription psychotropic medications. (Id. ¶¶ 11, 16). Plaintiff was permanently and totally disabled according to the Social Security Administration, and he was permanently and partially disabled according to the Veterans' Administration. (Id. ¶¶ 7, 8).

Plaintiff claims that the jailers and the County were indifferent to Plaintiff's medical needs while Plaintiff was incarcerated. (Compl.). First, Plaintiff alleges that the jailers deprived Plaintiff of his walking cane and did not help Plaintiff when he fell down while trying to walk on his own. (Id. ¶ 14). Second, he claims that he suffered severe withdrawals when the jailers allegedly would not allow him to take the medications that his physicians had prescribed. (Id. ¶ 13, 15). He claims that the jailers told him that his prescriptions had run out when in fact they had not "run out." (Id. ¶ 17). Third, when Plaintiff sought access

to doctors to treat the injuries from his fall and from his withdrawal symptoms, the jailers did not pay attention. (Id. ¶ 16). Fourth, Plaintiff was isolated for his entire sentence despite his medical conditions. (Id. at ¶ 18). Fifth, when Plaintiff was released from jail on or about March 14, 2004, the jailers released him without his prescription medications and thus forced him to "fend for [himself]." (Id. ¶ 19; Pl.'s Resp. to Def.'s Statement of Undisputed Facts ¶ 2; McAlister Aff. ¶ 19). As a consequence of this alleged "mistreatment, maltreatment, and abandonment," Plaintiff avers that he "suffered, and still suffers, from horrific nightmares" and that when he was released without his medicine he was not able to care for himself because of the withdrawals and pain. (McAlister Aff. ¶¶ 20, 21). Finally, Plaintiff had to travel to Memphis after his release in order to refill his prescriptions, which he claims should have been done before he left the jail. (Id. ¶¶ 19, 21).

Based on these alleged facts, Plaintiff filed a complaint against the unidentified individual jailers and against the County on March 28, 2005. Plaintiff claimed that the jailers and the County had violated his civil rights under the United States Constitution. (Compl. ¶¶ 23–26). Additionally, Plaintiff claimed that, under Tennessee law, the County and the jailers were liable for negligence, intentional infliction of emotional distress, and negligent infliction of emotional distress. (Id., Counts II–III). On June 21, 2005, Carroll County filed a motion seeking to have Plaintiff's state and federal claims dismissed as barred by the applicable statute of limitations. (Def.'s Mot. at 1).[1] Plaintiff responded to the

---

[1] The County attached the affidavit of Sue Barnes, the "Chief Jailer" in the County, in support of the motion. The County also attached an exhibit entitled "Booking Report" that was

3

County's argument.

## II.

The court will grant summary judgment if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c).

## III.

The statute of limitations applicable to Plaintiff's 42 U.S.C. § 1983 civil rights claims is provided by the most analogous state statute of limitations. See Sharpe v. Cureton, 319 F.3d 259, 265–66 (6th Cir. 2003), cert. denied, 540 U.S. 876 (2003). The relevant state statute of limitations in this case is found in section 28-3-104 of the Tennessee Code Annotated. See TENN. CODE ANN. § 28-3-104 ("Personal Tort Actions"). That section provides, in relevant part, that:

> (a) The following action[] shall be commenced within one (1) year after the cause of action accrued:
>
> . . . .
>
> (3) [a] [c]ivil action . . . brought under the federal civil rights statutes.

---

allegedly taken when Plaintiff surrendered on January 27, 2004. Finally, the County included a "Statement of Undisputed Facts" in support of dismissal.

4

Id. § 28-3-104(a)(3).

Here, it is undisputed that Plaintiff's complaint was filed on March 28, 2005, more than one year after he was released from prison and more than one year after he was subjected to the alleged deliberate indifference by the County. (Compl. at 1; Pl.'s Resp. to Def.'s Statement of Undisputed Facts ¶ 2; Pl.'s Additional Material Facts ¶ 10).[2] The one year statute began running, at latest, on March 14, 2004, when Plaintiff was released from jail. See Davis v. Wilson, 349 F. Supp. 905, 906 (E.D. Tenn. 1972), aff'd without opinion, 471 F.2d 653 (1972).[3] At latest, then, the limitations period expired on March 14, 2005.[4]

Plaintiff's attempt to avoid the limitations bar by reliance on Wakefield v. Thompson, 177 F.3d 1160, 1165 (9th Cir. 1999), Davis v. Brady, 143 F.3d 1021, 1025 (6th Cir. 1998), and Cheriee Gazette v. City of Pontiac, 41 F.3d 1061, 1065 (6th Cir. 1994) is not persuasive. Not one of those cases dealt with when a statute of limitations began to run on a particular cause of action—rather, they dealt with whether there actually was a cause of action. In

---

[2]The parties' disagreement about whether Plaintiff was released on March 11 or March 14, 2004, (see Pl.'s Resp. to Def.'s Statement of Undisputed Facts ¶ 2), is not "material" for purposes of the County's argument that the statute of limitations bars Plaintiff's claims. Both dates are more than a year before the date of filing.

[3]But see Hughley v. Roberts, 785 F.2d 308 (6th Cir. Jan. 24, 1986) (order) (stating that "the disability of imprisonment does not save the statutory bar under Tennessee state law") (internal citations omitted).

[4]To the extent that Plaintiff is claiming that the statute continued to toll after his release because of his physical and mental condition, (see McAlister Aff. ¶ 21; "I was not fully cognizant of my condition at the time of my early release . . ."), Plaintiff has failed to create a genuine issue that he was of "unsound mind" at that time. See TENN. CODE ANN. § 28-1-106; see also Seaton v. Seaton, 971 F. Supp. 1188, 1195 (E.D. Tenn. 1997).

Wakefield, the issue was whether a § 1983 plaintiff stated a facially legitimate Eighth Amendment claim by pleading that he was released from prison without an adequate supply of medication. See Wakefield, 177 F.3d at 1161. He claimed that he suffered a "relapse" and was arrested (presumably within the relevant limitations period) as a direct result of the lack of psychotropic prescriptions. Id. at 1162. The United States Court of Appeals for the Ninth Circuit held that he had stated a claim because the Eighth Amendment required the state,

> [to] provide an outgoing prisoner who is receiving and continues to require medication with a supply sufficient to ensure that he has that medication available during the period of time reasonably necessary to permit him to consult a doctor and obtain a new supply.

Id. at 1164. In Cheriee Gazette, the Sixth Circuit recognized that "a duty to protect can arise in a non-custodial setting if the state does anything to render an individual more vulnerable to danger." Cheriee Gazette, 41 F.3d at 1065 (citing DeShaney v. Winnebago County Dep't of Soc. Servs., 436 U.S. 658 (1989)). Finally, in Davis, the issue for the court of appeals was whether two police officers were entitled to qualified immunity when, "after taking [the plaintiff into police] custody, the defendant officers dropped [the plaintiff] off on a dark, busy highway and left him there against his will." Davis, 143 F.3d at 1024. The plaintiff had been intoxicated while in custody and was seriously injured when a car hit him after the officers abdicated their custodial responsibilities. Id. at 1023. The court of appeals concluded that the plaintiff had a clearly established constitutional right not to be exposed to certain governmentally-exacerbated risks while in police custody, and the court described

6

the abandonment at issue as a type of custodial neglect rather than as the breach of a "non-custodial duty." See id. at 1026.

Plaintiff cites these cases in support of the position that the police may owe citizens constitutional duties in some non-traditional, "custodial" settings and also for the idea that the state may be constitutionally required in some circumstances to provide prisoners with an adequate prescription supply upon their release from incarceration. (See Pl.'s Mem. Opp. Summ. J. at 4–7). He contends that these cases mandate extending the County's custodial duties beyond the date of his release and into the month of April. (Id. at 7). Plaintiff overemphasizes the distinction between the government's "custodial" and "non-custodial," or post-confinement, duties in a case where the distinction does not resolve the question presented. The County is not arguing, in this motion, that its duty to Plaintiff terminated automatically upon Plaintiff's release from "custody." Instead, the County is simply arguing that whatever cause of action the Plaintiff may have in this case is based on events that transpired, duties that were allegedly breached, and injuries that allegedly originated, more than one year before the action was commenced. Whether the constitutional violation occurs in a "custodial" setting or not, a claim that is based upon that violation must be brought in a timely manner. The problem for Plaintiff is that this complaint seeks relief for causes of action that accrued more than one year before the expiration of the statute of limitations. (Compl. ¶¶ 23–26, 30). When Plaintiff was released, allegedly, without an "adequate supply" of prescription medications, that was simply an additional violation of the County's

7

alleged constitutional duties to Plaintiff and it occurred more than one year before he filed his complaint. In short, Plaintiff's cause of action was ripe upon his release, and he should have known at that time that he had a cognizable § 1983 claim.

Plaintiff complains that he was abandoned before the end of his court-ordered sentence of confinement and that he had a right not to be "dump[ed]" by the County in what he suggests was an official effort to avoid having to provide medical care to him. (Pl.'s Mem. Opp. Summ. J. at 4). He again claims that the County had a duty to provide medicine to him that extended until as late as April of 2004,[5] and he argues that "dump[ing]" him violated that duty. (Id.). Nevertheless, Plaintiff was "dumped," if at all, more than one year before he initiated his lawsuit. The fact that he may have subsequently been required to "arrange transportation to Memphis" to obtain prescription refills does not bring his alleged constitutional cause of action within the statute of limitations. The inconvenience or burden that may have accompanied the preparation for and trip to Memphis was not a constitutionally significant harm. To be sure, Plaintiff's legal injury was no different in April than it was on the day that he was released in March. Therefore, his cause of action "accrued" no later than March 14, 2004.

In summary, notwithstanding Plaintiff's argument about non-custodial governmental duties to protect from harm, Plaintiff's complaint cannot be fairly read to plead any cause

---

[5]Plaintiff therefore argues that the date of release is "not relevant." (Pl.'s Mem. Opp. Summ. J. at 6). The court disagrees. Even if the "duty" extended into April, Plaintiff's *cause of action* "accrued," at the latest, on the day that he was released.

8

of action that "accrued" later than the date that he was released from the County Jail. The cases discussed above and cited by Plaintiff, even if they contain sound legal analyses, do not change the relevant dates for purposes of the limitations period in this case. As stated above, the relevant dates establish, as a matter of law, that the statute of limitations bars Plaintiff's federal claims.

IV.

Plaintiff's state tort claims against the County and its employees implicate the Tennessee Governmental Tort Liability Act ("TGTLA"), TENN. CODE ANN § 29-20-101, et. seq.. Section 29-20-305(b) of the TGTLA also provides a one year limitations period. See TGTLA § 29-20-305(b). For the reasons discussed in Part III, the state law claims are untimely and must be dismissed.

V.

Because the applicable statutes of limitation bar Plaintiff's state and federal claims, the County's Motion for Dismissal and/or Summary Judgment is GRANTED, and Plaintiff's state and federal claims are DISMISSED WITH PREJUDICE as to both the County and

9

"John Does 1–10."[6] The clerk is directed to enter judgment accordingly.

IT IS SO ORDERED.

                                    *James D. Todd*
                                    JAMES D. TODD
                                    UNITED STATES DISTRICT JUDGE

                                    26 September 2005
                                    DATE

---

[6] These "John Doe" defendants were not served with process as required by the Federal Rules of Civil Procedure. Even if they had, however, the federal and state claims against the John Does are also barred for the same reasons explained in Parts III and IV.

10

UNITED STATES DISTRICT COURT - WESTERN DISTRICT OF TENNESSEE



# Notice of Distribution

This notice confirms a copy of the document docketed as number 16 in case 1:05-CV-01093 was distributed by fax, mail, or direct printing on September 29, 2005 to the parties listed.

---

Jon A. York
PENTECOST GLENN & RUDD, PLLC
106 Stonebridge Blvd.
Jackson, TN 38305

William T. Winchester
THE LAW OFFICES OF WILLIAM T. WINCHESTER
2600 Poplar Ave.
Ste. 507
Memphis, TN 38112

James I. Pentecost
PENTECOST GLENN & RUDD, PLLC
106 Stonebridge Blvd.
Jackson, TN 38305

Honorable James Todd
US DISTRICT COURT